UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

HAROLD A. CASTLEMAN, *et al.*,

Appellants,

v. 6:06-CV-1077 (LEK)

LIQUIDATING TRUSTEE,

Appellee.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**MEMORANDUM-DECISION AND ORDER**

Appellants appeal the August 3, 2006 Memorandum Decision, Findings of Fact, Conclusions of Law and Order of the Honorable Stephen D. Gerling, Chief United States Bankruptcy Judge that: (1) denied Appellants' request to file late proofs of claim in Agway's bankruptcy proceeding; and (2) determined that Appellants are bound by the Bankruptcy Court's Order Confirming Debtors' Second Amended Joint Plan of Liquidation under Chapter 11 of the Bankruptcy Code.

## I. FACTS

### a. Background

On October 1, 2002, Agway and its affiliated debtors filed voluntary petitions under Chapter 11 of Bankruptcy Code. In January 2003, the Debtors requested that the Bankruptcy Court issue an order establishing April 30, 2003 as the final date for filing proofs of claim against the debtors (the "bar date") and sought Bankruptcy Court approval of the proposed proof of claim form and the proposed notices and publication procedures. Among other things, the Debtors sought approval to publish notice in the national editions of the *New*

*York Times* and *Wall Street Journal*, and to also publish in the *Syracuse Post-Standard* on one business day at least twenty-five (25) days before the bar date. By Order dated March 6, 2003, the Bankruptcy Court granted Debtors' motion. In accordance with the March 6, 2003 Order, Agway published the notices on March 21, 2003.

On April 28, 2004, the Debtors' Second Amended Joint Plan of Liquidation (the "Plan") was confirmed by the Bankruptcy Court (the "Confirmation Order"). The Confirmation Order appointed Appellee as the Liquidating Trustee ("LT") of Debtors' Liquidating Trust that was established to liquidate and distribute Debtors' assets and claims.

Appellants are persons who claim to have been injured by virtue of exposure to asbestos while working at the Texas City Refining plant ("Texas City plant") in Texas City, Texas. The Texas City plant was owned by Texas City Refining, Inc. Citing Agway's ownership of a 66% equity interest in Texas City Refining, Appellants claim that "Agway effectively owned and operated the Texas City Plant through one of its subsidiaries - Texas City Refinery, Inc." Appellant's Mem. of Law (Dkt. No. 8) at 11.

On February 14, 2005, some of the Appellants filed a personal injury action against Agway in Texas state court seeking to recover for injuries caused by exposure to asbestos at the Texas City plant. That action named Agway as successor to Texas City Refining, Inc. Upon learning of the personal injury action, on June 8, 2005, the LT moved to hold Appellants in contempt for violating the Bankruptcy Court's orders precluding any further claims against the Debtors. On June 13, 2005, Appellants filed a motion to allow late filed proofs of claim and sought an order clarifying that the Confirmation Order did not discharge the claims of certain persons claiming personal injury as a result of exposure to asbestos.

On August 3, 2006, the Bankruptcy Court denied the Liquidating Trustee's motion for contempt. The Bankruptcy Court also denied Appellants' motion to file late proofs of claim or to clarify that their claims were not discharged. It is this Order that is the subject of the instant appeal.[1]

**b. The Bankruptcy Court's August 3, 2006 Order**

The Bankruptcy Court first analyzed whether Appellant's claims arose pre or post-petition. The Bankruptcy Court noted the difficulties presented in a situation where alleged exposure to asbestos clearly occurred pre-petition, but any manifestation of injury or diagnosis of asbestos-related injury may not have occurred until post-petition. After canvassing the law on this issue and noting the various different tests used by courts across the country, the Bankruptcy Court adopted the "conduct test" and concluded that a claim arises pre-petition when the acts constituting the tort occurred pre-petition even if the manifestation of injury occurred post-petition.

Having concluded that Appellants' claims arose pre-petition, the Bankruptcy Court next had to determine whether Appellants were afforded due process of law through the publication of the bar date. Stated otherwise, the Bankruptcy Court had to decide whether Appellants received adequate notice of their opportunity to file claims with the Bankruptcy Court before being precluded from doing so.

In ruling on this issue, the Bankruptcy Court distinguished between known creditors (defined as those actually known to, and those whose identities can be readily ascertained by, the trustee) and unknown creditors (defined as those whose interests are either

[1] Appellants do not appeal that portion of the Bankruptcy Court's order declining to find them to be in contempt.

conjectural or future, or, although they could be discovered upon investigation, do not in the due course of business come to the knowledge of the debtor). The Court noted that due process entitled known creditors to actual notice, but that debtors can provide constructive notice to unknown creditors.

In concluding that Appellants were unknown creditors, the Bankruptcy Court stated that:

> While the Asbestos Claimants assert that there has been asbestos litigation concerning the Texas City Plant since1987, there is no evidence that such litigation had been commenced against Agway during the fifteen years before Agway filed its chapter 11 petition on October 1, 2002. Indeed, the Beaumont Claimants did not commence their litigation against Agway until approximately two years after the Bar Date and a year after confirmation of the Debtors' Plan and appointment of the LT.
>
> Not only have there been no allegations that any of the Asbestos Claimants had sued Agway pre-petition, there also have been no allegations that the Asbestos Claimants were employees of Agway at any time, as had been the case in Waterman SS Corp. Agway apparently did not have a business relationship with the Asbestos Claimants, and its only interest in the Texas City Plant, where the Asbestos Claimants assert they were exposed, was limited to a 66% equity interest in Texas City Refining, which in turn owned the Texas City Plant. Agway allegedly divested itself of its interest in Texas City Refining in 1987 or 1988. A thorough review of Agway's books and records is unlikely to have uncovered any indicia to suggest the existence of such claims. It has not been asserted that the Debtor possessed any specific information that reasonably suggested that it was liable for asbestos claims of individuals who previously worked at the Texas City Plant and their identity. Based on the facts presented and the review of the cases cited above, the Court finds that the identities of the Asbestos Claimants were not reasonably ascertainable by Agway. The Court finds it difficult to conclude that they were even conceivable, speculative or conjectural under the circumstances at the time of the Bar Date, as well as at the time of the confirmation of the Debtors' Plan. Accordingly, the Court finds that the Asbestos Claimants were "unknown" claimants.

Gerling Order (Dkt. No. 4, Attach. 32) at 28-29.

Having found that Appellants were unknown claimants, the Bankruptcy Court next had to decide whether they received adequate notice. The Court found that they did, noting that:

> It is impracticable to expect a debtor to publish notice in every newspaper a possible unknown creditor may read. Providing adequate notice to unknown creditors such as the Asbestos Claimants did not require Agway to publish notice in the many locations where Agway conducted business. That would have been onerous and too costly.

Id. (internal citations omitted). In responding to Appellants' assertion that notice should have been published in a local Texas newspaper, the Bankruptcy Court stated that "there is a question whether [Agway's] interest in Texas City Refining qualifies as 'conducting business' in Texas City, Texas. Moreover, there is no information concerning whether the Asbestos Claimants were actually residents of Texas City, Texas. Courts consistently reject the argument that a publication of 'general circulation,' such as the *New York Times* or *Wall Street Journal*, must be available in the particular locality where the objecting party resides." Id. at 29-30.

The final issue addressed by the Bankruptcy Court was whether to allow Appellants "as pre-petition creditors to file late proof of claim." Id. at 31. Having found that Appellants failed to demonstrate excusable neglect, the Bankruptcy Court denied their request to file late proofs of claim.

## II. STANDARD OF REVIEW

Rule 8013 of the Rules of Bankruptcy Appellate Procedure provides, in pertinent part, that the bankruptcy court's findings of fact "whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous." FED R. BANKR. P. 8013. A bankruptcy court's conclusions of law, on the other hand, are subject to *de novo* review on

appeal. In re Ionosphere Clubs, Inc., 922 F.2d 984, 988-89 (2d Cir.1990); see also In re Bennett Funding Group, Inc., 146 F.3d 136, 138 (2d Cir. 1998).

## III. DISCUSSION

The primary basis for this appeal is that Appellants were denied their due process rights because they did not receive adequate notice of the bar date. Appellants argue that "Agway knew of its potential liability stemming from its control of the Texas City Refinery. Thus, the Asbestos Claimants were members of a known body of potential asbestos claimants whose identities were reasonably ascertainable prior to Agway's bankruptcy and bar date." Appellants' Mem. of Law (Dkt. No. 8) at 16. Appellants, therefore, argue that they were entitled to actual notice. Appellants further argue that "the Asymptomatic Claimants had not even manifested symptoms of an asbestos related disease at the time of Agway's limited publication notice. Moreover, Appellants state that it is impermissible to bar the claims of mass tort claimants whose pre-petition injuries were unknown by the claimants at the time of the debtor's bankruptcy proceedings when the claimants' interests were not represented in the bankruptcy proceedings and the claimants were not entitled to receive a fair settlement or distribution under the debtor's plan." Id. at 16-17.

### a. Whether Claimants are "Known" or "Unknown"

The parties do not dispute the fundamental principles of due process that apply to this case. "[D]ue process . . . is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). Similarly, the parties do not dispute the recognized legal distinction between known and unknown claimants. The dispute concerns whether Appellants are unknown claimants.

As the United States Court of Appeals for the Third Circuit has explained:

> [A] "known" creditor is one whose identity is either known or "reasonably ascertainable by the debtor." Tulsa Professional Collection Serv., Inc. v. Pope, 485 U.S. 478, 490, 108 S. Ct. 1340, 1347, 99 L.Ed.2d 565 (1988). An "unknown" creditor is one whose "interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to knowledge [of the debtor]." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 317, 70 S. Ct. 652, 659, 94 L.Ed. 865 (1950).
>
> A creditor's identity is "reasonably ascertainable" if that creditor can be identified through "reasonably diligent efforts." Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 798 n. 4, 103 S. Ct. 2706, 2711 n. 4, 77 L.Ed.2d 180 (1983). Reasonable diligence does not require "impracticable and extended searches . . . in the name of due process." Mullane, 339 U.S. at 317, 70 S. Ct. at 659. A debtor does not have a "duty to search out each conceivable or possible creditor and urge that person or entity to make a claim against it." In re Charter Co., 125 B.R. 650, 654 (M.D. Fla. 1991).
>
> Precedent demonstrates that what is required is not a vast, open-ended investigation. See Mullane, 339 U.S. at 317, 70 S. Ct. at 658-59 ("Nor do we consider it unreasonable for the State to dispense with more certain notice to those beneficiaries whose interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to knowledge of the common trustee."); see also Trump Taj Mahal Assocs. v. O'Hara (In re Trump Taj Mahal Assocs.), 1993 WL 534494, 1993 U.S. Dist. LEXIS 17827 at * 9 (D. N.J. Dec. 13, 1993) (explaining that "those creditors who hold only conceivable, conjectural or speculative claims" are unknown). The requisite search instead focuses on the debtor's own books and records. Efforts beyond a careful examination of these documents are generally not required. Only those claimants who are identifiable through a diligent search are "reasonably ascertainable" and hence "known" creditors.

Chemetron Corp. v. Jones, 72 F.3d 341, 346-47 (3d Cir. 1995) (footnotes omitted); see also In re J.A. Jones, Inc., — F.3d —, 2007 WL 1816612, at *4-5 (4th Cir. 2007); In re Enron Corp., No. 01-16034 (AJG), 2006 WL 898031, *5 (Bankr. S.D.N.Y. Mar 29, 2006); In re XO Communications, Inc., 301 B.R. 782, 792-94 (Bankr. S.D.N.Y. 2003); In re Drexel Burnham Lambert Group Inc., 151 B.R. 674, 681 (Bankr. S.D.N.Y. 1993) ("What is reasonable

depends on the particular facts of each case. A debtor need not be omnipotent or clairvoyant. A debtor is obligated, however, to undertake more than a cursory review of its records and files to ascertain its known creditors."). "[A] known creditor or claim arises from facts that would alert a reasonable debtor, based on a careful examination of its own books and records, to the possibility that a claim might reasonably be filed against it by a particular individual or entity." In re J.A. Jones, Inc., 2007 WL 1816612, at *5.

Appellants argue that they were known claimants because their identities could have been ascertained by reviewing employee lists, contacting local unions, and notifying subcontractors. This position is unsupported by the record evidence. The record evidence demonstrates that Agway owned a 66% interest in Texas City Refinery prior to 1987. In 1987, Texas City Refinery sold all of its assets, including the Texas City Plant. Texas City Refinery was dissolved in 1993. The evidence further reveals that Agway did not own a refinery located in Texas City, Texas; did not have employees working at a refinery in Texas City; did not hire any contractors to work in Texas City; and that the Texas City Plant was owned and operated by Texas City Refining. Similarly, there is no evidence that Agway maintained, or had access to, employee records for Texas City Refining or that Appellants were employees of Texas City Refining. The record further demonstrates that asbestos litigation concerning the Texas City plant had been ongoing since 1987, but no litigation was commenced against Agway in connection with that plant until 2005. Accordingly, it was not clearly erroneous for the Bankruptcy Court to conclude that: (1) Appellants failed to point to evidence demonstrating that they were employees of Agway; (2) there was insufficient evidence that Appellants had a business relationship with Agway; (3) a search of Agway's records would not have revealed Appellants' identities; and (4) in light of the fact that Agway

was not named as a defendant in the Texas City plant litigation until 2005, it had insufficient reason to know it might be held liable for asbestos-related injuries sustained by persons working at the Texas City Refinery. Based on these facts as found by the Bankruptcy Court, and as supported by the record evidence, this Court agrees with the Bankruptcy Court's conclusion that Appellants were unknown claimants.

**b. Whether the Unknown Claimants Received Adequate Notice**

Having concluded that Appellants were unknown claimants, the next question is whether the Bankruptcy Court properly concluded that Agway's publication was sufficient. Because Appellants were not known, they were not entitled to actual notice. In re Enron Corp., 2006 WL 898031, at *4. Appellants contend that Agway's publication was inadequate because notice should have been published in local Texas newspapers, such as *The Galveston Daily News*, *The Guidry News*, or some other regional publication likely to be read by persons who were exposed to asbestos at the Texas City plant. Appellants' Mem. of Law (Dkt. No. 8) at 12.

The Court can discern no basis upon which the Liquidating Trustee would have had to publish notice in a local Texas newspaper. As previously discussed *supra*, there is insufficient evidence that Agway conducted business in the Texas City area or that Agway had sufficient reason to believe there were any claimants in the Galveston, Texas area. The Bankruptcy Court properly concluded that it would have been "impracticable to expect a debtor to publish notice in every newspaper a possible unknown creditor may read" and "[p]roviding adequate notice to unknown creditors such as the Asbestos Claimants did not require Agway to publish notice in the many locations where Agway conducted business. That would have been onerous and too costly." Appellants received adequate process of law

when notice was published in two national papers as well as one local paper where Agway was conducting business. See Chemetron Corp., 72 F.3d at 348-49 ("Publication in national newspapers is regularly deemed sufficient notice to unknown creditors, especially where supplemented, as here, with notice in papers of general circulation in locations where the debtor is conducting business."); see City of New York v. New York, N.H. & H.R. Co., 344 U.S. 293, 296 (1953) ("Notice by publication is a poor and sometimes hopeless substitute for actual service of notice. Its justification is difficult at best. But when the names, interests and addresses of persons are unknown, plain necessity may cause a resort to publication.") (internal citation omitted); Mullane, 339 U.S. at 317 ("This Court has not hesitated to approve of resort to publication as a customary substitute . . . where it is not reasonably possible or practicable to give more adequate warning."). While the practical reality may be that many persons did not actually see the notice published in the three newspapers indicated above, Appellants have failed to proffer sufficient facts demonstrating that notice should have been published in a local Galveston newspaper. Therefore, it cannot be said that failure to publish in such a local newspaper denied Appellants due process of law. Accordingly, this Court affirms that portion of Bankruptcy Court's Order for substantially the same reasons set forth by that Court.

**c. Leave to File Late Notice of Claims**

Appellants also appeal that portion of the Bankruptcy Court's decision denying their application for leave to file late notice of claims. Relying on In re Waterman S.S. Corp., 157 B.R. 220 (S.D.N.Y. 1993), Appellants argue that the notice was necessarily ineffective with respect to those claimants who were asymptomatic as the time the notice was published because "creditors who are cognizant of a bankruptcy but are unaware that they have a claim

in the bankruptcy are without notice that they must assert their claims." Appellants Mem. of Law (Dkt. No. 8) at 31.

Most of the Appellants were diagnosed with asbestos-related diseases before the date Debtors filed their petitions. Accordingly, their claims are barred absent a showing of excusable neglect. Nine Appellants allege that they were not diagnosed with asbestos-related disease until after the date Debtors filed their petition. Of these nine, four claim to have been diagnosed prior to the publication of the bar date. Three of the nine claim to have been diagnosed before the April 28, 2004 Plan Confirmation Order.

The constitutional question presented here of whether due process permits the bankruptcy code to preclude claims by those Appellants who have been exposed to injury pre-petition, but did not manifest injury until sometime thereafter, may be premature. It is unclear from the record whether these nine Appellants had sufficient information available to them before the publication of the bar date such that they reasonably should have known that they had a potential claim against Agway. The affidavits submitted by Appellants in support of their allegations concerning diagnosis dates are insufficient in this regard. For example, Appellants submit the Affidavit of Donald Jobe, Executor of the Estate of Joe Jobe. That Affidavit claims that, among other things: (1) Joe Jobe was exposed to asbestos; (2) Joe Jobe was diagnosed with pulmonary asbestosis on August 21, 2003; and (3) "[p]rior to this date, [Joe Jobe] was unaware that he suffered from an asbestos-related disease and he did not attribute any symptomatic manifestation of disease to his asbestos-related disease." Jobe Aff. at ¶ 4. The affidavits on behalf of the other Appellants are identically worded, with the exception that the diagnosis dates differ from person to person and some of the affidavits were submitted on behalf of the injured person himself.

The problem with these affidavits is that they are unsupported by reference to medical records and, more significantly, they are carefully crafted to address the injured person's subjective knowledge (i.e. "I was unaware that I suffered. . . ."; "I did not attribute any symptomatic manifestation . . . to asbestos-related disease."). These affidavits do not address whether these individuals reasonably should have known of their injury and the cause thereof. If the facts reveal that these individuals reasonably should have been aware of the nature of their injuries pre-petition, then the constitutional issue is avoided.

In the event the Court must address the constitutional issue, it finds that due process has been satisfied in the unique circumstances presented in this case. The Court is mindful of, and sympathetic to, the consequences of barring certain tort claims on the basis of publication notice, especially where Appellants may not have realized the full extent, or cause, of their injuries. The Court also must remain mindful of the competing concerns at issue here - notions of due process versus the bankruptcy goals of affording a fresh start.

The cases on which Appellants rely are distinguishable by the facts that the claimants in those cases were persons who had not manifested any detectible injury but were either known or reasonably ascertainable, and it was known or reasonably ascertainable that potential future claimants, or a class of potential future claimants, existed. For example, Waterman was an asbestos case where the court concluded that the claimants were either known or reasonably ascertainable or the debtor should reasonably have been aware of the existence of potential future claimants because: (1) "in light of the highly publicized Johns-Manville bankruptcy, which sought bankruptcy protection precisely because the ravages of asbestos dust threatened the continued viability of an otherwise robust Manville in the form of unmanifested asbestos-related claims, it is our belief that ample

evidence existed for Waterman to conclude that an amorphous class of unmanifested asbestosis claimants . . . existed at the time Waterman file its bankruptcy petition," In re Waterman, 141 B.R. at 557; (2) "[o]ver 100 claims asserting asbestos-related diseases were filed against Waterman during its reorganization," id. at 558; (3) the majority of claims were filed by members of the Marine Engineers Beneficial Association who "were, for the most part, plaintiffs in litigation pending against Waterman . . . in New Orleans . . . prior to the bankruptcy filing date, id.; and (4) "[o]f the 'tens of thousands' of Waterman employees, Waterman knew that other employees were exposed to asbestos, yet never listed them on its schedules." Id. Thus, it is clear that under the circumstances of the Waterman case, Waterman should have been well-aware of the existence of a potential class of future asbestos claimants. The court expressly disapproved of Waterman's efforts to "sandbag a class of known creditors through publication notice when Waterman simply could have appointed a representative to receive notice for, and represent the interests of, known but unidentifiable future claimants." Id. The bankruptcy court held that notice to them was ineffective because "even if that individual had read the 'notice,' those individuals would have remained completely unaware that their substantive rights were affected. . . . Thus, even if the Asbestosis Claimants had read the bar date notice published in their local paper, the notice failed to notify Asbestosis Claimants of the nature of their claims." Id. at 558. Additional reasonable forms of notice were available in that case to satisfy the competing interests of the bankruptcy code and the future claimants' due process rights.

Similarly, in Acevedo v. Van Dorn Plastic Mach. Co., 68 B.R. 495 (Bankr. E.D.N.Y. 1986), the case upon which the Waterman court relied, Jose Acevedo was injured while working on a Van Dorn plastic injection molding machine at the factory of his employer, Cut

Rate. Thereafter, Cut Rate filed for bankruptcy protection. Acevedo then commenced a personal injury action against Van Dorn. Van Dorn, in turn, looked for contribution and indemnification from Cut Rate. Cut Rate claimed that Van Dorn's claim was barred. The court stated that "due process should . . . require that a debtor notify a creditor of his claim when the creditor is unlikely to know about the claim otherwise. A creditor who is notified of the bankruptcy but not of his claim is in the same position as a creditor who has notice of his claim, but not of the bankruptcy." Acevedo, 68 B.R. at 499. The court, therefore, concluded that "[s]ince Cut Rate knew that Mr. Acevedo was injured on a Van Dorn machine before the bankruptcy [and it is typical for a manufacturer who has been sued by an injured employee to seek indemnity and contribution from the employer], [Cut Rate] should have told Van Dorn about the accident. . . . [T]he debtor's schedules . . . do not list Van Dorn as having an unliquidated contingent claim, and . . . Van Dorn had no other notice of its claim. Therefore, [Van Dorn was] unfairly strip[ped] of its claim, and consequently, the court suggests that Cut Rate's claim is non-dischargeable in bankrutpcy." Thus, in Acevedo, both the identify of a future claimant and the likelihood of a future claim were known or reasonably ascertainable to the debtor, but the claimant had no notice of the bankruptcy proceeding. This was insufficient to satisfy notions of due process.

Here, by contrast, Appellants have pointed to insufficient evidence that Agway knew, or could reasonably ascertain, Appellants as potential claimants. Appellants have not pointed to evidence demonstrating that Agway was aware, or reasonably should have been aware, of asbestos claims filed against them. Unlike in Waterman and Acevedo, there is no evidence that Appellants were employees of Agway or otherwise had a relationship with Agway. Similarly, there is insufficient evidence suggesting that Agway had reason to believe

it was subject to mass tort litigation resulting from exposure to asbestos at the time it filed for bankruptcy or published notice of the bar date such that it could reasonably expect there to be future unknown claimants with injuries that had not yet manifested themselves. In re Chance Indus., Inc., — B.R. —, 2006 WL 4449576, at *11 (Bankr. D. Kan. 2006). To the contrary, the asbestos litigation concerning the Texas City plant was ongoing for fifteen years before anyone named Agway as a defendant. Any connection between Agway and asbestos claims arising out of the Texas City plant become even more attenuated when considering the lack of evidence that Agway owned or operated the plant. The only basis for holding Agway liable is its 66% equity interest in Texas City Refinery, Inc., the company that owned and operated the Texas City plant. Appellants fail to point to where in Agway's records or books Agway could reasonably have determined that it might be subjected to future asbestosis claims from persons working at the Texas City plant. Thus, there would be no reason for Agway to expect such a class of potential future claimants and no reason to seek the appointment of a future claims representative.

This instant case is akin to the Chemetron case, see Chemetron Corp., 72 F.3d 341; Jones v. Chemetron Corp., 212 F.3d 199 (3d Cir. 2000). In that case, from 1965 to 1972, Chemetron operated a manufacturing facility that caused environmental contamination. In 1988, Chemetron filed a petition for reorganization. The bankruptcy court set a bar date of May 31, 1988. The bankruptcy court order required actual notice to known creditors and required notice to unknown claimants by publication in the *New York Times* and *Wall Street Journal*. Chemetron complied with the order and also voluntarily published notice in seven other newspapers in areas where it was doing business at the time it filed for bankruptcy protection. On July 12, 1990, Chemetron's reorganization plan was confirmed.

Several plaintiffs claimed that they were unaware of the degree of risk posed to their health and safety by the contaminated site until after 1991. In 1992, the plaintiffs brought suit against Chemetron alleging injury from exposure to toxic chemicals. The Third Circuit found the claimants to be unknown claimants and, therefore, that publication in two national newspapers was sufficient notice. The Third Circuit held that "because the claimants were unknown creditors and Chemetron's publication notice was sufficient, claimants must show that their failure to file in a timely manner was due to 'excusable neglect;' otherwise, their claims arising pre-petition will be barred." Chemetron Corp., 72 F.3d at 349. Thus, the fact that the plaintiffs' injuries may not have been known until after the bar date and post-confirmation was not, in and of itself, grounds for permitting late claims. Rather, with one exception, the plaintiffs had to demonstrate excusable neglect.[2] The Third Circuit found that "'ignorance of one's own claim does not constitute excusable neglect.'" Jones, 212 F.3d at 205 (quoting In re Best Prods. Co., Inc., 140 B.R. 353, 359 (Bankr. S.D.N.Y. 1992); see In re Edge, 60 B.R. 690 (Bankr. M.D. Tenn. 1986) (noting that a claim arises at the time of the debtor's pre-petition misconduct and such a claim is discharged notwithstanding that the claimant may not have known of the negligence until after the bankruptcy filing). The Third

[2] The one exception pertained to a plaintiff that was not born until more than two years after the confirmation. The Third Circuit found that "a claimant who has no appropriate notice of a bankruptcy reorganization cannot have his claim extinguished in a settlement pursuant thereto." Jones, 212 F.3d at 210. Because the infant had no notice of or participation in the reorganization plan and no representative was appointed to represent the interests of future claimants, the Third Circuit held that, under notions of due process, the infant's claims were not discharged.

This exception is inapplicable to the instant case. All Appellants were born by the time notice of the bar date was published and the plan was confirmed. As previously discussed, the publication in two national newspapers and one local newspapers satisfied due process concerns as to them.

Circuit, therefore, concluded that, with the one exception previously discussed, the plaintiffs' claims were discharged by the confirmation order.

The Court finds that the Chemetron analysis applies here. Appellants were unknown creditors with unknown claims who received due process of law through the publication in the national newspapers. Under the circumstances of this case, any additional notice to Appellants, including the nature of their claims, was not feasible or practical. As the Supreme Court has stated "[t]his Court has not hesitated to approve of resort to publication as a customary substitute . . . where it is not reasonably possible or practicable to give more adequate warning." Mullane, 339 U.S. at 317. When dealing with unknown claimants concerning claims that are not reasonably foreseeable, "employment of an indirect and even a probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights." Mullane, 339 U.S. at 317; Tulsa Professional Collection Servs., Inc. v. Pope, 485 U.S. 478, 490, 108 S. Ct. 1340, 99 L.Ed.2d 565 (1988) ("For creditors who are not 'reasonably ascertainable,' publication notice can suffice."). This applies "to those beneficiaries whose interests are either conjectural or future." Mullane, 339 U.S. at 317.

The Court is cognizant of the harsh realities of barring claims held by persons who may not reasonably have been aware of their claims on or before the bar date. Because of this harsh reality, in some instances, a future claims representative is appointed to act as a guardian for the unknown future claimants. Where, for example, a debtor knows it is facing significant tort liability resulting from asbestos exposure, it may be reasonable and appropriate to assume that future claims will arise out of that exposure and, therefore, appoint a future claims representative. While this is a desirable outcome, it is not feasible in

a case such as this one where it is not known that there is a class of unknown future claimants. Based on the present record, there is insufficient evidence that Agway or the LT were aware (or reasonably should have been aware) of a class of asbestos litigants such that they (or the Bankruptcy Court) should have concluded that a future claims representative would be useful or necessary. Accordingly, Appellants' claims are barred unless they can demonstrate excusable neglect.

**d. Excusable Neglect**

At no time did Appellants address the issue of excusable neglect before the Bankruptcy Court. Rather, they merely argued that due process permitted them to file late proofs of claim. Accordingly, this issue is waived on appeal. See Troy Sav. Bank v. Travelers Motor Inn, Inc., 215 B.R. 485, 491 (N.D.N.Y. 1997) (Scullin, D.J.); see also In re Rare Earth Minerals, 445 F.3d 359, 365 (4th Cir. 2006) (failure to raise an issue before the bankruptcy court waives it on appeal). Similarly, in their appellate briefs, Appellants do not address the Bankruptcy Court's ruling concerning the issue of excusable neglect. For this additional reason, this issue has been waived. Id.

Even assuming Appelants did not waive that issue, the Bankruptcy Court's Order must be affirmed. The burden of demonstrating excusable neglect is on Appellants. In re Enron, 419 F.3d 115, 121 (2d Cir. 2005). Appellants have failed to make any showing in this regard. Their due process arguments are rejected for the reasons set forth above. Appellants have failed to articulate any other basis for a finding of excusable neglect. Nonetheless, the Court agrees with the Bankruptcy Court that there has been significant delay and allowing late claims would cause prejudice to the creditors and to Debtor in terms of delay and cost.

## IV. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED**, that the August 3, 2006 Order of the Honorable Stephen D. Gerling, Chief United States Bankruptcy Judge is **AFFIRMED;** and it is further

**ORDERED**, that Appellants' appeal is **DISMISSED**; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED.**

DATED: August 28, 2007
Albany, New York

Lawrence E. Kahn
U.S. District Judge